We'll call the next case Paul McKernan v. Superintendent of Smithfield S.C.I. District Attorney of Philadelphia Ms. Pulsetti These may be the students Good afternoon, may it please the court, Maria Pulsetti for Paul McKernan I'd like to reserve three minutes for rebuttal if I may Two minutes? Three if I may Three minutes? Yes, am I not microphoned? And keep your voice up Yes During this trial, the judge met with the victim's family to discuss the family's website, which the judge called vicious slander She commented on the evidence, saying that I think this was a horrible, horrible murder, I really do She said that the victim's family was very fortunate that an eyewitness had come forward to testify for the prosecution And she repeatedly asked the family whether they were satisfied with her continuing to preside And asked them to ask her to recuse if they were not Defense counsel, having observed these extraordinary communications between a judge and the victim's family Left the room and permitted ex parte communications to ensue after counsel departed Counsel didn't ask to review the website or to look at the printouts of the website that were in the room Counsel didn't ask for a read back of the conference or transcript Counsel, when he met with Mr. McKernan to tell him what had happened, failed to tell Mr. McKernan that the judge had said I think this was a horrible, horrible murder And failed to tell Mr. McKernan that the judge had praised the eyewitness testimony Instead, counsel advised Mr. McKernan not to accept the judge's offer of recusal and mistrial and to proceed During the ensuing colloquy, counsel failed to object when the DA, repeated then by the judge, said That during the conference they had not discussed the merits or the facts of the case, which was factually incorrect And counsel also did not object when the judge made the remarkable statement I'm going to pray to God that I be fair to you Counsel was ineffective on this record and Mr. McKernan's right to a fair trial before an impartial tribunal was denied I'd like to discuss the ineffectiveness issue first As this court well knows, a claim of ineffective assistance of counsel consists of two parts Deficient performance and prejudice Counsel was deficient for a number of reasons Counsel was deficient first for leaving the room after observing these communications And thus allowing further ex parte communications to take place Counsel didn't know, of course, at the time that counsel advised Mr. McKernan what had happened after counsel left the room What had happened was significant The victim's family had offered to the judge to redline the website And they said they would remove any material that she thought was offensive The family also offered to her that she But this was as Mayor Rizzo coined her Let them loose Lisa That was one of the descriptions, yes Let them loose Lisa In a first degree murder case Potential first degree murder case The defendant and counsel chose to go non-jury Before Judge Richette Okay Sounds like it was somewhat strategic to me So that's interesting So counsel did testify at the evidentiary hearing Counsel's strategy was to stay in this courtroom And counsel thought that counsel had a better chance in this courtroom than otherwise However, when we perform a Strickland analysis We don't look at counsel's strategy until we establish that it's an informed strategy Now this court, that's Strickland itself Says that counsel has to make a thorough and informed decision Before you can accord strategic value to that decision And here counsel wasn't able to do that Because counsel left the room before significant things were said Counsel knew what Judge Richette had said to the Gibson family But notwithstanding what he heard from the judge What's wrong with him continuing with his strategy Which he advised his client to do in the first place Was to waive his right to a jury trial And go non-jury It sounds to me that this is what they thought was their best chance Of getting a favorable verdict in a common police court in Philadelphia Clearly that was trial counsel's initial strategic decision As counsel went into this case However, counsel failed to appreciate that the circumstances had flipped 180 degrees Yeah, but you have to prove it's objectively unreasonable For counsel to have chosen And stayed with that course Under the circumstances of what he knew Of Judge Richette Well first I'm saying that we actually don't get to counsel's strategy Until we establish that counsel made an informed decision Now this court in Brake Iron v. Horn Which is cited in the briefs Looked at a case where counsel was aware That a juror had been exposed to prejudicial information during voir dire And counsel failed to inquire further into that And this court said that counsel's failure to seek to exclude the juror on that basis  Well that would be analogous That case would be analogous to this case If counsel had not been privy to anything that the judge had said But that wasn't so, right? So what I want to know from you is Counsel's in the room Here's a certain part of the judge's statements Counsel leaves the room to go talk to Mr. McKernan There are further statements Those are the ones he missed, right? So just identify for us What is exactly the statements that he missed That throw off the calculus that Judge Fisher is suggesting That we should look at Which is he essentially knew That the judge was attempting to mollify the family Yet her reputation was such That he made the strategic decision to stay I think there's three things counsel missed here First of all, by not reading the website Counsel did not realize that there was a hearsay description Of the facts of the offense on the website The hearsay description was inconsistent with the Commonwealth's case at trial It was worse for the defendant It was that Mr. McKernan had come to the door with the baseball bat When Mark Gibson arrived at his house The trial testimony was only after the confrontation ensued and escalated Did Mr. McKernan go and get a baseball bat So the judge had been exposed to that prejudicial hearsay on the website Second This is a non-jury trial She was able to parse out what she may have heard somewhere else Versus what she heard on the record Well actually we don't know that in this case Judge Fischer Because there was How do we not know that? She wasn't a juror, she was an experienced judge You could find fault with her Some of her decisions and her sentencing But she was an experienced judge Well I want to tell Judge Fischer two more things But I also respond to that by saying That during the cross-examination I think of Mr. McKernan's mother Who was a defense witness The judge asked Mrs. McKernan about rosaries and flowers Which had not been part of the Commonwealth's case There was an allegation on the website That someone from Mr. McKernan's family Had disrupted a memorial site And taken away rosaries and flowers It was not in the Commonwealth's case The judge asked about it And the only way she could have known about it is the website So she was actually reading the website And mixing up what was part of the case And what was on the website Yeah but that shouldn't be part of our calculus So that's just separate So you're going to get to my two things now right? I'm going to get to your two other things So the two other things are That the victim's family As I said they offered to the judge They said oh if you were so offended by this website We're willing to let you redline it We'll remove anything offensive to you on the website And would you like to write something About your thoughts on victim's rights And we'll post it on the website And the judge answered yes So she came to this agreement with the victim's family And then the other thing that happened was Yes but I'm sorry I interjected before But if you're correct on that These are factors that counsel didn't know about Indeed So how could they factor into his strategy As to whether or not to stay in front of Judge Rochette That's precisely the reason we can't look at the strategy And accord deference to it Because it was not an informed strategic decision It was uninformed And that's how we don't get to that step of the Strickland analysis It's unreasonable for counsel not to be fully informed It says that in Strickland itself It says that in Brake Iron It seems to me that that's an argument That might play better on your other argument If you get to the merits on whether or not There was a Sixth Amendment violation Because he was denied the right to a fair trial Absolutely I'm not directing you there I'm just saying I don't know how this figures in To ineffective assistance of counsel You're not alleging You're not alleging here At least I didn't see it in the record You're not alleging that counsel made a mistake By leaving the room To consult with your client That is part of counsel's failure to be informed Yes, that is part of the deficient performance Yes That he should have never left the room Yes Then you have to say Because it permitted ex parte communications But he didn't permit the ex parte communications The court permitted the ex parte communications Well, the standard is prevailing professional norms So whether a homicide lawyer in a homicide trial When these communications are taking place Thinks it's a good idea to leave the room I don't know if that's reasonable to think of that There's a point at which he went out specifically To consult with his client As to whether or not his client wanted to Withdraw his waiver of the jury trial And go before another judge Absolutely It seems to me He was operating as experienced counsel at that point The fact that Judge Rochette Continued her ex parte Continued or began then Ex parte communications Without either counsel or the defendant there Goes to Judge Rochette Not to ineffective assistants at counsel Well, but you say Can't we have a five minute recess While I go consult with my client Rather than just walk out of the room I would like to get to actually the merits I don't know that that point was argued though I want to stand counsel Point to me is The judge said to the victim's mother I would have done the same thing in your shoes Were all mothers here They called me So in these circumstances Leaving aside the claim of ineffective assistants at counsel It's a straight up due process violation as well The Supreme Court says That where there's a potential for bias I want you to stay on that a second Don't we have here This is we're reviewing We're reviewing the decision of the state court Yes As to whether or not Counsel's performance was ineffective Correct So don't we have a doubly difficult standard So the 2254 How does that play here So on the ineffectiveness claim There's two prongs And the Commonwealth actually makes no 2254D argument Because they argue it's procedurally defaulted The 2254D argument applies to the prejudice prong Which the Superior Court did address It didn't at all address deficient performance So you have been over review of deficient performance And on prejudice The Pennsylvania Superior Court said They applied an analysis That was contrary to Or an unreasonable application Of clearly established federal law That's how we're going to get over 2254D The Superior Court said We find support for the trial court's conviction In our review of the evidence And therefore find that the judge was not so prejudiced or biased That her mind was not open So this They're relying on a sufficiency of the evidence analysis To say that there couldn't have been bias And that is contrary to clearly established federal law Both in Toomey v. Ohio itself And then much later in Edwards v. Ballislock The Supreme Court says No matter what the evidence against you You're entitled to a fair trial before an impartial tribunal So that's contrary to We'll give you a few more minutes on the other claim Okay, thank you, Your Honor So this case is precisely the type of problem That the Supreme Court has been concerned with In its due process of jurisprudence There is a risk of actual bias or prejudgment before the judge The judge had been personally insulted By the material on the website We know from the record that she was in fact insulted And had the possible temptation Not to hold the balance nice, clear, and true Now we don't need to show actual bias To show a due process violation The precedent going back to Toomey v. Ohio Shows you need to show an objective probability of bias McConnell has made an argument in the briefs I don't know if they'll read it today That because we can't show a case that's factually square On point with this one in Supreme Court precedent It's not a due process violation That is incorrect The Supreme Court precedent in Toomey v. Ohio Which is that if the circumstances Would not permit an average judge I'm sorry, if the circumstances would Place a possible temptation in front of the average judge Not to hold the balance nice, clear, and true That's a violation of due process That language, the possible temptation To the average judge language in Toomey Has been cited 18 times by the U.S. Supreme Court In every other landmark due process case since that time So that is the standard that we apply here In the commonwealth's attempt to narrow the standard To the narrow factual circumstances It's incorrect Ms. Pulsetti, how do you get beyond procedural default On this claim? I think you're probably referring to the exhaustion issue On the freestanding due process claim On direct appeal in the Pennsylvania Superior Court Mr. McKernan raised a claim That he had been before a biased judge And that his right to a free trial had been denied But he did not use the words due process So it was not what we say federalized Or it did not use the talismanic constitutional language Now this court in Evans v. Court of Common Pleas Explained that when a state proceedings Do not raise a claim in constitutional language It may still be exhausted if it's been cast In terms so particular as to call to mind A specific right protected by the Constitution Mr. McKernan's brief said The bias of the judge deprived the defendant of a fair trial It said recusal is required whenever there is a substantial doubt As to impartiality This casts the claim in such a clear light As to be a constitutional claim And this court has followed the Evans standard Much more recently in Nara v. Frank in 2007 Which was a The issue was competency to plead guilty It was pled in state court as competency to plead guilty With failure to cite any federal constitutional language Or federal constitutional cases And this court held that it was exhausted Because it was cast in terms so particular As to call to mind a constitutional right So similarly here Mr. McKernan's claim is exhausted All right, thank you Ms. Belcedi And we'll have you back on rebuttal Yeah Mr. Goldworth Good afternoon, your honors My name is Joshua Goldworth I represent the Commonwealth of Pennsylvania's official respondents The FLEs Keep your voice up, Mr. Goldworth Your honors, the due process claim here Is that the judge violated the petitioner's Constitutional right to due process By failing to grant a mistrial and a recusal That no one requested And the defense was taken the position it didn't want After jeopardy had attached And I will note that my friend In the opening brief and the reply brief Even here at argument Hasn't addressed the double jeopardy point You know, even once Well at this point now that we have a jury verdict Is double jeopardy still an issue? Because it is In fact, the defendant is coming back and saying This isn't a fair trial If the judge, without the defendant's Willingness, agreement Had declared a mistrial Then you'd have a due jeopardy problem But at this stance in the proceedings Where you have a verdict And where it's the defendant who's complaining Is there really a double jeopardy issue? Well, your honor, my point is a little bit different My point is that at the point we were at trial The defense was taken the position That we don't want a mistrial That we don't think one is necessary If the defense is taken the position In the midst of trial That a new trial isn't necessary And that they don't want the judge to recuse herself And the judge says, you know what? I'm going to do it anyway Because I think even fairness Or the appearance of fairness I think it's appropriate Mistrial declared There's a 100% chance That there will be a double jeopardy claim And I think it will be a very formidable one And I think even assuming That we even got to federal habeas I would be standing up here Answering questions like Isn't the most obvious indicator That there wasn't a manifest necessity For a mistrial? The fact that the defense insisted That it didn't want one? And the next question would be Considering that the Constitution Doesn't, doesn't That the Constitutional due process standard Doesn't govern Doesn't go to appearance In propriety But actual bias What business did the judge have In declaring a mistrial That the defense didn't want? I mean, I think that you really can't You really can't separate Every argument that I have made I think would have, you know Would have been turned back In the opposite direction Frankly, as a former trial judge I am so appalled That the judge would do this In the first place Would bring these people in In the first place That I look at this whole situation In that light And how can you have a judge do that? And what can we do To make sure that in the future No judge has this type of Chambers conference With the attorneys And with the family of the victim In which the judge Shows herself to be So Influencible By the criticism of her That you believe That she can't make a fair verdict Well, I mean, I respectfully disagree Well, first of all I mean As the district court recognized The proceedings were certainly unorthodox But in terms of influencible I think both The trial counsel And the prosecutor Both testified That they were well familiar with her From appearing in front of her In homicide trials Both before and afterward And they thought That even though her reputation You know, was very But we're not dealing with 25 years On the bench We're dealing with that situation With that defendant Right there in that room Well, and that's And I think that's why That's why trial counsel said Had this been his first time In front of this judge And had this been a different judge He might have felt a different way About what she was saying And what she was doing Her activities don't meet actual bias? Pardon me? Her activities don't meet actual bias? I mean, I don't think they do, your honor Okay, so tell me In light of all of the things That we've discussed What would tip the balance For you to agree That it was actual bias? What more would have to have been done? Well, I mean, for the most part I don't think you can separate out Her willingness I mean, you know She was willing She was willing to recuse If she thought anybody questioned You know, questioned her fairness And ability to persuade You know, to preside impartially And I think that's one of the reasons Why I've never seen any case ever You know, any appealing case ever Where, you know, where they argue That there was a due process violation In a judge not granting a mistrial That it was the defense's position It didn't want Well, why isn't this case Very similar to Mayberry v. Pennsylvania? Mayberry was a contempt case, your honor I mean, that was a contempt case Sure, it was a contempt case But the Supreme Court said It was wrong for the judge Who had the verbal skirmish The continual verbal skirmish With Richard Mayberry To preside over the sentencing I don't think you had Such a verbal skirmish here, your honor And again, if I can direct The Court's attention To the Johnson v. Harrell case That this Court decided In which it said You really have to look At the language In the Supreme Court's decisions And you need to Distinguish out the holdings And the holdings Of some of these cases Are quite narrow Like, for example They tried to make The petitioner In the Johnson v. Harrell case Tried to make The very broad argument About what Inray Murchison Supposedly stood for And saying Well, the balance You know, fair and true  Well, no, no That's language That maybe explains the holding But the holding of the case Is, you know, The due process violation Of the sentence Because You have a due process violation Because you have a judge Who was functioning As both prosecutor And the judge In the case Under Michigan's Unique one-man Grand jury And judge procedure So you don't think That can be said here By some of her comments? No, no, your honor    In recent years Has expanded The due process guarantee As it relates to The judge And the judge And the judge And the judge And the judge And the judge And the judge Uh, gee Why do you arbitrage To Uh, uh, cases Cases of judicial   I understand I thiño No, no, no, your honor I don't want The one case That handed down Within the last month Involving your office But cases More perhaps More on point Cases of Caperton Via Massey Yes, your honor As I addressed both in my brief And as I addressed In the 28-J letter To the extent Those cases came down After Uh, judgment Became final In this case Under, under both Heeg and under the Under subsection D Of the habeas statute Um, I mean And the district court Addressed that You know, that point too Um, you have to address Clearly established Federal law And it's through At the time Uh, of the state Of the state court's Decision Alright, so If you go Before Caperton Um Your position is Uh, whether it's Actual bias Or apparent Um, probability Of bias That All of the facts Here don't amount To a Uh An issue Um, well I mean When we talk about An issue I think that the Criticism of the Judge in this case Pales in comparison Uh, to what was Leveled against the District judge For example In the Bayless case That I cited You know, at length In my brief And they were talking In Bayless About the judges Reconsidering the Exact issue That was before The court Reconsidering His ruling On the suppression Motion Which was An issue In which the Judge was Subjected to Intense Criticism On the national Level To reconsider That very Decision And the Second circuit For example Held it Even under The much More forgiving Uh, plain Error Standard Uh, that Applies on You know, on A federal criminal Case in direct Review It wasn't a Close case Because You know, we Can't, you Know, I mean The defense Made a decision Not to move For accusal Before judgment And we can't Have a situation You know, where Uh, you know We're going to Uh, you know We're going to Grant relief You know, on Appeal And to the Extent that We're talking About Uh, an issue About the Uh, you know Perceived integrity Of the judicial System We would need To think about The very Obvious Uh, incentives Toward whether You want to Call it Um, verdict Testing Uh, whether You want to Call it Sandbagging Uh, the Um, the Taking your Chance And then only After judgment Saying I know That we Are accusing Um, and I will say Is this An instance Where there's A real Knowing waiver Given the fact That McKiernan Uh, didn't Have, um, all Of the facts One of the Arguments That your, um Adversary Made was Um, there's This gap In time When, uh Counsel Left Uh, that Clearly Substantive Um, there Was a Difference  Concept of Counsel And the Courts And that The facts  Uh, Mr. McKiernan Wasn't Privy To That It Was A It Was I Think A Three Page Passage In The Transcript Where For The Most Part All That Happened Was You Repetition Of The Same Things you        do And Um, That They Had A Three Page Passage So The Most Part All That Happened Was You Know That          Part All That Happened Was You Know That They Had A Three Page Passage So The Most Part All That Happened    That   A  Page Passage So The    Most  All That Happened Was So   Part All That Happened Three Page Passage So Part All That